We'll proceed to the next case on the oral argument calendar, which is Tamayo-Menchaca. I may be mispronouncing it, versus V. Casey. Good morning. Good morning. May it please the Court, Joe Sequenza for Petitioner. As with the case before me on the docket, this cancellation case presents two issues. The first issue is whether substantial evidence supports the I.J.'s finding that male petitioner lacked the requisite good moral character because of what the judge perceived to be false testimony under oath. The record here is a little more spare than in the last case. It is, Your Honor. All I have is I did it out of fear and embarrassment. It didn't say. Exactly. Why is that enough? The record is very incomplete. Male respondents, male petitioners, rather, answers to his counsel's questions regarding prior arrests or convictions. I believe at A.R. 160, he said, I quote, quote, I said it because of fear and embarrassment, close quote, and also, quote, because I was ashamed and I was afraid. That was the extent of the inquiry between the court petitioner counsel and government counsel. There was no cross-examination. There was no follow-up at the I.J. as to why he was, in fact, embarrassed or afraid. If you take it at face value and his statement is not contradicted by record evidence, we would submit that he is entitled to the benefit of the doubt that, in fact, according to the Kunja's case, if he makes the statement out of embarrassment or fear, that's not false testimony in order to obtain an immigration benefit. I believe the court was clear that you need that subjective intent. And I would concur with Your Honor that the record is just not clear in that regard. Well, you know, in a practical sense, if what you're assertion is true,  they can just wipe the record clean by saying I did it out of fear and embarrassment. And usually when you're confronted with a crime, that means certainly there is a certain amount of embarrassment and fear if you're confronted with an under oath in a court proceeding. Possibly, Your Honor, but I would submit in this case that the context in which the question was asked was in the middle of the proceeding. In fact, this proceeding had been pending for several years with prior counsel. And his testimony had been given where he had denied the prior arrest or conviction earlier in the proceedings. And then at these continued proceedings, his counsel briefly inquired why he had made those statements, because the I.J. was ready to pretermine his application based on government documents, supposedly establishing a prior conviction outside the 10-year window. And the I.J. was ready to determine that he had lied under oath. Now, she did not specifically cite to 1101 to obtain an immigration benefit, but I believe the parties concur that that is the issue in this case. Is there any evidence, counsel, that the petitioner would have suffered some adverse effects if he told the truth, such as embarrassment to his family, to third parties, or some other adverse effect? That is what was not specifically inquired into, Your Honor. The record is not fully explored in that sense. It's a fact issue, and the record was not fully developed. In fact, the I.J. had just cursorily stated petitioner's statements out of embarrassment or fear do not excuse his false allegation. It's not a false allegation. It's a false testimony, which I believe is contrary to what the Kundge's case has held. So I believe whatever the reason why he was afraid or embarrassed wasn't fully explored on the record. And perhaps that's where... And where does that leave us? Perhaps a remand to fully explore that issue. Getting back to what Your Honor had asked about why he made those statements, I believe that he had given that answer without an opportunity to think through, in other words, if he had said it simply to, quote, wipe the slate clean, rather, I don't think he had ample opportunity to ponder that, if you will, and think, well, if I just say that, I'll wipe the slate clean. I don't believe he was that sophisticated in order to come up with that rationale with respect to his answer. I don't think we can just send the case back for further evidence. I'm sorry, Your Honor? I don't think we can send the case back just because the record is incomplete. The evidentiary record is incomplete on this point. We would submit that... You'd have to say that the I.J. misapplied the law in some way or that it's insubstantial. Correct, that substantial evidence does not support a finding, and again... If that results in a reverse, that would result in granting your petition and not sending it back for further evidence. Yes, and again, if you take it at face value, he's entitled to the benefit of the doubt. And if substantial evidence doesn't support a finding, then, yes... Do you think that the I.J.'s decision here actually, in the decision, that the I.J. actually finds that he had the intent, the requisite intent? No, and she may... In fact, I think the record is not clear as to why she denied him or found that he lacked good moral character. She states simply that he lied under oath, and that's all she said, and secondarily that he had committed a conviction which, at the time, she may not have fully appreciated was outside the tenure window. So the only possible basis for her to find that he lacked the requisite good moral character was that he, quote, lied under oath. And she doesn't refer to subjective intent or subjective intent to obtain an immigration benefit. You know, and I take your point on that, but it's difficult. Usually when there's somebody who says, I was embarrassed and therefore I didn't tell the whole story, there's an explanation with it, that, for example, if someone goes to... makes a statement to someone upon arriving in the United States and says, I don't know who the person was, I was afraid of this and that, but when you get into the immigration courts and you have counsel, it's a slightly different matter. It seems to be a little more serious. Granted, Your Honor, but again, other than Petitioner's brief inquiry to the respondent about why he said what he said, there was no follow-up by the government cross-examination. There was no further inquiry by the judge. And perhaps more light would have been shed if someone had asked him, well, sir, why are you embarrassed? Why are you afraid when you made those statements? And that's why we would submit this case requires reversal. I think we have your argument in hand. Why don't you save some time for rebuttal? Thank you. Thanks. May it please the Court, Jane Schaffner for the respondent. Mr. and Mrs. Tamayo... We have to lift up the microphone a little bit so we can hear you. Thanks. Mr. and Mrs. Tamayo were represented by several attorneys at six hearings over the course of five years and failed to meet their burden of proving their eligibility for cancellation of removal.  And that's the immigration judge's conclusion, which the board affirmed that Mr. Tamayo failed to establish good moral character and Mrs. Tamayo failed to establish the requisite ten years of continuous physical presence in the United States. During his individual merits hearing, Mr. Tamayo provided false testimony under oath regarding his first entry into the United States, whether he had been arrested, and whether he had ever used any other names. Because the immigration judge found that he did so with the intent of obtaining immigration benefits, he is statutorily precluded. Where does she make that finding? She finds that he's statutorily precluded from establishing good moral character. Where does she find the intent? Section 101F6. I want you to show me in the decision where that shows me where she makes the finding. I don't think she specifically says in her decision that he had this objective intent, but Section 101F6 requires that the false testimony. The section in her decision? I don't recall, but I don't believe so. Here's the entirety, at least from what I see. Therefore, I'm finding that there was perjury and that he is statutorily ineligible. That's it. So I guess our question is, how do we infer that she made a finding of intent? I think we have to go back to Section 101F6, which provides the statutory framework for false testimony. And it's two-part false testimony under oath with the purpose of obtaining an immigration benefit. And if she found that he found false testimony and was statutorily precluded from establishing good moral character, which I think is clear as opposed to a discretionary finding that he failed to establish good moral character, then I think we have to read in that she found the requisite intent as well. And I think, as we argued in our brief, it's important to note that because he provided this testimony during his immigration hearing, it's reasonable to infer that he did so for the purpose of obtaining... He was represented by the most stalwart member of the bar, if I'm not mistaken. That's correct. At the time he... Made this statement. He made this statement. He was represented by Miguel Gata... Who was, at that point, suspended from the California bar, soon to be disbarred from our circuit and the Court of Immigration Appeals. That's true. And the immigration judge asked the petitioners at the conclusion of the... Sorry, at the outset of the hearing, whether they were aware of his difficulties and whether they wanted him to continue to represent them notwithstanding his difficulties. And they said that he did. Isn't that a little unusual? We do. And we've raised this issue before because we've had disbarred attorneys that have appeared before the BIA. And the explanation was given to us years ago is disbarred attorneys are better than no attorney. But it sort of begs the question, he was suspended from the practice and then the IJ says, do you still want to go ahead? What are they going to do at that point? I mean, seriously. And then, of course, all of this ensues. So now we've got... I mean, as you spin this out, you probably have an ineffective assistance claim that's coming down the road on a motion to reopen, right? To date, the petitioners have not made an ineffective assistance of counsel claim. And there would be a question, I think, as to whether they could establish due diligence in pursuing such a claim. But when Mr. Tamayo's false testimony was discovered, his counsel, Mr. Gata, requested a continuance so that he could confer with his clients, review the FBI report. And he was granted that continuance. And the matter was not resumed for another two years, at which point Mr. Tamayo had obtained new counsel and explained his prior misstatements. It's worth noting also that he, in his application for cancellation, he indicated that he had never been arrested, that he had never used any other names. He indicated during direct exam he had never been arrested, he had never used any other names. On cross, he again asserted he had never been arrested, he had never used any other names. It was only when he was confronted with that FBI report that the continuance was requested and proceedings were held over for two years. And two years later, he explained that he was afraid and embarrassed. As we discussed earlier, he provided no other indication as to why he was afraid or embarrassed. And I think it's worth noting that his arrests were for illegal entry and aiding and abetting the entry of other illegal aliens. But he was not embarrassed, he was not afraid or ashamed to admit that he had previously left the United States to go back to Mexico to get married to his wife and illegally entered with his wife again in 1989. She is undocumented as well. So it seems to me there is an inconsistency about his explanation that he was afraid and embarrassed because on the one hand he was not afraid and embarrassed to admit prior illegal entry. Yet in explaining his false testimony, he said he was afraid and embarrassed. Let me switch topics for a minute to return to the application of the statute. In this case, the government raised, affirmatively raised the statutory bar by putting in the fingerprint evidence in the crimes. We all know that the petitioner bears the ultimate burden of proof, but is it your view that the government does or does not bear the burden of proof of proving statutory ineligibility because of the fact of a crime? I would submit that cancellation is four prongs, requires in addition to continuous physical presence and hardship and proving that you have not been convicted of certain crimes that you prove that you have not been, that you prove that you are a person of good moral character. And section 101F sets out the criteria which would prevent a person from establishing that they are a person of good moral character. So I think it's the alien's burden to establish that they are a person of good moral character. I think that's true, but for example in criminal sentencing if the government wants to use a conviction a fact of conviction they bear the burden of proof initially on that. So if the petitioner in this case makes a prima facie case of eligibility for cancellation and the government wants to contest that doesn't the government bear the burden of proof on its affirmative defenses, you think? I think that's true. As you discussed in the last case the government would have the obligation to show well he lied and here's the evidence to show that he lied. And then he would have the burden of rebuttal on that the ultimate burden of proof on showing eligibility for cancellation. The alien does, yeah. If there are no other questions Any further questions? The respondent Thank you. Thank you. If I may just briefly on the second issue whether substantial evidence supports CIG's findings that the female respondent failed to prove sufficient continuous physical presence for the ten year period we would submit that even though admittedly she didn't provide the most complete detail about where she had resided during that ten year period we would submit that the record is sufficient to show that she was able to articulate generally where she lived in terms of cities and with whom she lived and she may not have had exact recall of street addresses during that ten year period but that's reasonable it's reasonable to presume that given the the lengthy proceedings of this case over five years and the fact that she was trying to recall addresses more than ten or within that ten year period more than ten years before the proceedings excuse me within the ten year period of the proceedings that it's reasonable to presume that she doesn't have exact full recall however she did sufficiently testify where she lived within that ten year period and that was not controverted by the government but you did provide really fairly detailed descriptions of the addresses for five or six addresses going back eight years but there was a two year blank what are we supposed to construe as to that given the length of time of these proceedings and the fact that she may have not had full recall of all the places where she had lived during that ten year period we would we would submit that the record is still sufficient to establish physical presence for that ten year period I believe even though she wasn't able to provide detail for that two year period she was able to generally say where she was and with whom she was living during that two year period we would submit that the record is sufficient to establish the Thank you Counsel Thank you The case is heard and will be submitted for decision
judges: Thomas, Paez, Walker